Chris D. Barski (024321)
**BARSKI LAW PLC**
9375 E. Shea Blvd., Suite 100
Scottsdale, AZ 85260
Tel: (602) 441-4700
Fax: (602) 680-4305
cbarski@barskilaw.com
*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| NEIL N. SEXTON, | Case No. 2:21-bk-02123-EPB |
| Debtor. | |
| MORGAN COURTNEY WANG, | Adv. No. 2:21-ap-00174-EPB |
| Plaintiff, | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| NEIL N. SEXTON, | |
| Defendant. | |

Defendant, Neil Sexton, through undersigned counsel, hereby moves for summary judgment on the First Amended Complaint filed by Plaintiff on November 23, 2021. As articulated below, Plaintiff's First Amended Complaint does little to fix the deficiencies present in the original Complaint. Specifically, Debtor has obtained the trial transcript on the jury verdict day which conclusively forecloses Plaintiff's position that she was awarded damages on the IIED claim. Likewise, the amendments under the Section 727 allegations fail to cure the issues previously raised. Plaintiff's claims before this Court fail as a matter of law.

This Motion is supported by the following Memorandum of Points and Authorities, Separate Statement of Facts, along with relevant declarations and exhibits attached thereto.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. FACTUAL BACKGROUND**

A. *The Accident and Jury Trial*

1. Plaintiff and Mr. Sexton were college friends having met in the same social group while attending Cornell University in Ithaca, New York. (Statement of Facts "SOF" ¶ 1; Amended Complaint ¶ 7).

2. Plaintiff requested help in moving from downtown New York City to Ithaca, New York prior to the fall semester in 2012. (SOF ¶ 2).

3. Mr. Sexton drove from New Hampshire to New York City to help Plaintiff move. (SOF ¶ 3).

4. After packing the vehicle, they left for Ithaca, New York. (SOF ¶ 4; Amended Complaint ¶ 5).

5. Just prior to reaching Ithaca, New York, Defendant's vehicle crossed the center yellow line into oncoming traffic. (SOF ¶ 5; Amended Complaint ¶ 8).

6. Plaintiff was severely injured and a passenger of the other vehicle was killed. (SOF ¶ 6; Amended Complaint ¶¶ 9-10).

7. Mr. Sexton was also seriously injured, including severe emotional and psychological injuries treated following the accident. (SOF ¶ 7).

8. Mr. Sexton was cited with a traffic violation for crossing the center line. He was tested for drugs and alcohol on the scene and there was nothing in his system. (SOF ¶ 8).

9. Mr. Sexton routinely visited Plaintiff in the hospital where she was being treated for her injuries. (SOF ¶ 9; Amended Complaint ¶ 14).

10. Plaintiff's other friends attending college in Ithaca allegedly did not come to visit her in the hospital in New York City, over four away each way. (SOF ¶ 10; Amended Complaint ¶¶ 14-15).

11. Plaintiff blamed her lack of visitations from school friends on Mr. Sexton. (SOF ¶ 11; Amended Complaint ¶ 16).

12. Plaintiff filed an action against Mr. Sexton in the Supreme Court of the State of

New York, County of New York, on June 12, 2013. (SOF ¶ 12; Amended Complaint ¶ 20).

13. Plaintiff stated two causes of action in the New York suit: (1) negligence; and (2) intentional infliction of emotional distress ("IIED"). (SOF ¶ 13; Exhibit A to Amended Complaint).

14. Mr. Sexton was found guilty of the civil traffic violation under Vehicle and Traffic Law 1120(a) which provided that "a vehicle shall be driven upon the right half of the roadway." (SOF ¶ 14; Amended Complaint ¶ 21 and Exhibit A to Amended Complaint).

15. Following the civil traffic violation, Plaintiff moved for summary judgment solely on the negligence count. (SOF ¶ 15).

16. The New York judge granted summary judgment on liability, for the negligence claim only, due to the traffic violation. (SOF ¶ 16).

17. Defendant did not sit for his deposition. The failure to sit for a deposition resulted in a stipulation that Defendant Sexton was not permitted to testify at trial. (SOF ¶ 17; Amended Complaint ¶¶ 24-25).

18. The case was tried before a jury over eight days. On September 28, 2017, the jury delivered the damages verdict on the negligence count and awarded $5,000,000 for pain and suffering through the date of the verdict, $6,000,000 in future pain and suffering, and $60,000,000 in future medical expenses. The judgment added interest of approximately $19,000,000 with interest continuing to accrue at 9% annually ("Judgment"). (SOF ¶ 18; Amended Complaint ¶ 35 and Exhibit B to Amended Complaint).

19. The IIED claim was not subject to the prior summary judgment ruling and went to the jury without Mr. Sexton offering evidence. The jury came back and found Mr. Sexton liable for intentional conduct, but awarded no damages. (SOF ¶ 19).

20. The Judgment reflects damages that were sought on the negligence claim – medical costs and pain and suffering. The IIED claim sought damages for extreme emotional distress and mental anguish. [See State Court Complaint at Paragraph 51 attached as Plaintiff's Exhibit A]. There was also no finding of punitive damages that are typically only associated with an intentional tort. (SOF ¶ 20).

21. Ms. Wang was sitting in the courtroom when the verdict came back and is well aware that she was awarded no damages on the intentional tort claim. (SOF ¶ 23).

22. Plaintiff's New York counsel, Mr. Ben Rubinowitz, brought a post-verdict motion with respect to the IIED claim. Specifically, Mr. Rubinowitz argued that the jury verdict on proximate cause should be "set aside … as against the weight of the credible evidence." (SOF ¶ 24).

23. Mr. Sexton's counsel argued against Plaintiff's motion:

> There was plenty of medical evidence produced at the time of trial, in the form of both testimonial evidence, and, they had a whole myriad, of boxes of documentary evidence for the jury to see, and, they determined that there was no, severe, emotional distress, which was caused by the conduct of the defendant, and, therefore, I believe that the motion should be denied at this time.

(SOF ¶ 25).

24. Ms. Wang garnished Mr. Sexton's wages and received approximately 15% of his net wages bi-weekly for three years until he recently became unemployed at the end of 2020. Ms. Wang received a total of $8,630.91 in 2020 and slightly larger amounts for years prior. (SOF ¶ 26).

25. During that time, Mr. Sexton was earning approximately $7,500/month in gross income and was also repaying his parents for prior financial contribution to his education. (SOF ¶ 27).

B. *Debtor's Attendance at Cornell and Costs Associated With Attendance*

25. Mr. Sexton attended Cornell University for four years as an undergrad starting in the fall of 2007 and graduating in the spring of 2011. He thereafter stayed at Cornell University for the next year pursuing his master's degree. (SOF ¶ 28).

26. Mr. Sexton grew up in New Hampshire with two working parents. (SOF ¶ 29).

27. Mr. Sexton relied on loans to pursue his educational endeavors at Cornell. These loans came mostly from his parents. (SOF ¶ 30).

28. Cornell University is a private institution. According to public records, tuition, room and board and mandatory fees for 2007 was approximately $45,000. These same fees by 2011 had increased to $55,000. (SOF ¶ 31).

29. Debtor's parents also contributed to living expenses for their college son. (SOF ¶ 32).

30. Debtor's parents paid for Mr. Sexton's educational and living expenses both with personal loans as well as a second mortgage against their primary residence. Debtor's father also paid out of pocket between 2007 and 2012 for his son's education and living expenses. (SOF ¶ 33).

31. Lastly, the Debtor took out some small federal student loans totaling approximately $7,000-$10,000. (SOF ¶ 34).

32. The agreement between father and son was that the Debtor would first repay the student loans that were solely in his name. After that, Debtor would repay his parents' contributions. (SOF ¶ 35).

33. Those repayment plans got pushed back due to the horrific accident on the night of August 20, 2012. Mr. Sexton thereafter paused his attendance at Cornell University and the university withdrew his attendance after he failed to return after a period of time. (SOF ¶ 36).

34. After the attorneys' fees ceased shortly after the trial, Mr. Sexton began payments to his parents for the cost of his education. (SOF ¶ 37).

35. Mr. Sexton memorialized the amounts of his parents' educational and support contributions in a promissory note dated September 28, 2018. (SOF ¶ 38).

*C. Procedural History*

36. Debtor filed bankruptcy on March 25, 2021 seeking a fresh start.

37. Plaintiff brought this action on June 25, 2021 and the summons was issued on June 28, 2021.

38. Debtor filed a Motion to Dismiss on July 28, 2021. [DE 4].

39. Plaintiff filed a Response to the Motion to Dismiss on August 12, 2021. [DE 5].

40. Debtor filed a Reply on August 26, 2021. [DE 6].

41. A hearing was held on the Motion to Dismiss on November 2, 2021. The Court denied dismissal of the Section 523(a)(6) claim on the basis that a clearer record was needed and it should be presented as a summary judgment motion. Plaintiff was granted leave to

correct the Section 727 allegations.

42. Plaintiff filed its First Amended Complaint on November 23, 2021.

43. Debtor filed an Answer on December 13, 2021. [DE 12].

## II. LEGAL ANALYSIS

### A. *Summary Judgment Standard*

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact." *Fed. R. Civ. P.* 56(a). "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989 (9th Cir. 2018).

### B. *Issue Preclusion and Claims Preclusion Bars Plaintiff's Section 523(a)(6) Claim*

The doctrine of collateral estoppel, or issue preclusion, prevents parties from relitigating settled matters, and "collateral estoppel principles apply … pursuant to Section 523(a)" where a creditor reduces a fraud claim to a final judgment." *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). In order to determine if the judgment is final, and whether collateral estoppel principles apply, the Court must look to state law – "in the courts of such state … from which they are taken." *In re Nourbakhsh*, 67 F.3d 798, 800 (9th Cir. 1995). Under New York law, collateral estoppel or issue preclusion, "applies if the identical issue sought to be precluded was necessarily decided in an earlier action, at which the party opposing preclusion had a full and fair opportunity to contest the issue." *Wax v. 716 Realty, LLC*, 151 A.D.3d 902, 58 N.Y.S.3d 83 (N.Y. App. Div. 2017).

In this case, the issue of intentional infliction of emotional distress was fully and fairly litigated in New York. Mr. Sexton was found liable on the first element of the IIED claim. However, the jury found that Ms. Wang's distress was not caused by Plaintiff's alleged

conduct. (SOF ¶¶ 19-23). In other words, there were no damages. *Id.* She cannot now re-litigate those allegations. Ms. Wang has no damages. She has no claim under Section 523(a)(6) and is barred from asserting new intentional tort claims under the doctrine of claims preclusion.[1] Her first count predicated on Section 523(a)(6) must be dismissed.

The Judgment itself is clear that there was no award for emotional distress. There was no award of punitive damages typically associated with intentional torts. (SOF ¶ 20). Rather, the Judgment only mentions pain and suffering which is attributable to the negligence claim. The verdict form on Question 5 was for causation and the jury found that any conduct was not a "substantial factor in causing plaintiff MORGAN WANG severe emotional distress." (SOF ¶ 22). The questions that followed for severe emotional distress damages were not answered as Plaintiff did not prevail on causation. (SOF ¶ 22).

To add further clarity, Mr. Sexton has attached the sample jury instruction publication which generated those instructions. (SOF ¶ 21). Those specific instructions come from the IIED claim and not the negligence claim. (SOF ¶ 21). Finally, Debtor has obtained the transcript of the court proceedings on the day the jury came back with their verdict. A copy of that transcript is attached to the Statement of Facts and reflects that Plaintiff's counsel sought to set aside the jury verdict on the IIED claim. (SOF ¶¶ 23-24). There is no ambiguity in the jury's verdict. With no genuine issue of material issue of fact on the intentional tort verdict, Plaintiff's first cause of action must be summarily denied and dismissed with prejudice.

### C. *The Debtor's Student Loan Obligations to Debtor's Parents Do Not Raise Claims Under Section 727*

Plaintiff's First Amended Complaint does little to clarify the deficiencies present in the original Complaint. There continues to be pleadings issues that are defective. But to summarize, Plaintiff alleges that Debtor has falsified records under 727(a)(3), that the student loan debt is a material false oath made knowingly and fraudulently under Section 727(a)(4)(A)

---

[1] Claim preclusion prevents litigation of all grounds for, and defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Brown v. Felsen*, 442 U.S. 127, 131 (1979).

or (a)(4)(B), and that the oaths in the 2016 bankruptcy case in New Jersey were false and serve as a basis to deny a discharge under Section 727(a)(7).

### 1. *Debtor Has Not Falsified Records Under Section 727(a)(3)*

A plaintiff must establish two elements under 11 U.S.C. § 727(a)(3) in this context: "(1) that the debtor falsified financial records; and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *In re Cox*, 41 F.3d 1294, 1296 (9th Cir.1994). "[T]he purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs." *Caneva v. Sun Communities Operating Limited Partnership*, 550 F.3d 755, 761 (9th Cir. 2008). Normally the consumer debtor with no business affairs to speak of does not implicate § 727(a)(3). *In re Scott*, 172 F.3d 959, 970 (7th Cir. 1999).

Plaintiff alleges that the debt to Debtor's parents related to educational expenses "constitutes falsification of recorded financial information and supports loss of discharge under 11 U.S.C. § 727(a)(3)." Amended Complaint at Para. 65. Plaintiff further alleges that "the promissory note executed by the Debtor in 2018 in favor of his parents is a sham document and not a legitimate reflection of an obligation of the Debtor." Amended Complaint at Para. 66. Plaintiff has not alleged that this issue makes it impossible to ascertain the Debtor's financial condition as they are required to.

There are few, if any, cases of which the Debtor is aware which assert a 727(a)(3) challenge regarding debts. The majority of those cases all deal with records related to the disposition of assets. In one similar case that Debtor has been able to find, a creditor made an allegation that a promissory note was "falsified" financial records because it was entered into without consideration. *In re Floyd*, 322 B.R. 205, 213 (Bankr. M.D. Fla. 2005). The bankruptcy court found that the creditor did not establish a valid cause of action under Section 727(a)(3). Namely, the bankruptcy court found that the debtor did receive the funds but most importantly ruled that the creditor did not meet the second element – "that it was impossible to ascertain the financial condition" of the debtor. *Id.* The financial condition of the debtor in that case, as in this case, was abundantly clear and there was no valid claim based upon this.

In this case, Ms. Wang does not contend that the promissory note makes it impossible to ascertain the financial condition of Mr. Sexton. That allegation is nowhere in the First Amended Complaint. Nor can it even credibly be pled. Ms. Wang cannot credibly contend that the student loan issue really prevented her from knowing the Debtor's financial condition. Ms. Wang has been garnishing the Debtor's wages for three years and is well-aware that he has routinely made between $85,000 and $90,000 annually. Ms. Wang was awarded a judgment of $71,000,000 plus $19,000,000 in interest and ongoing interest accruing at approximately $6,500,000 per year. Nobody should have any trouble determining the Debtor's financial condition given these figures. Mr. Sexton's financial condition is as dire as they come. He will never be able to pay a dollar of principal to Plaintiff given the interest accruing on the Judgment. The Chapter 7 Trustee has had no difficulty assessing the Debtor's financial condition and neither should Ms. Wang nor this Court.

For these reasons, Plaintiff's Section 727(a)(3) claim must be dismissed with prejudice.

### 2. *The Loan(s) From Debtor's Parents for Education and Support Are Valid and Not False Claims Under 727(a)(4)(A) or (a)(4)(B)*

Section 727 is construed liberally in favor of a discharge and strictly against the party objecting to discharge. *In re Adeeb*, 787 F.2d 1339, 1342 (9th Cir. 1986). Plaintiff's allegations are under Section 727(a)(4)(A) and (a)(4)(B) for a false oath or false claim. Debtor will consolidate these subsections as they are substantially similar and are based upon the same allegations. "[T]o deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010). "The fundamental purpose" of this subsection "is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *In re Page*, 568 B.R. 687, 698 (Bankr. Alaska 2017).

Plaintiff cites the clerical error in the New Jersey bankruptcy filing which omitted to list the Debtor's obligations to his parents. But this omission does not establish that the Debtor did not, and currently does not, owe a debt to his parents. Plaintiff cannot credibly contend that five years of education at Cornell University would not cost around $300,000. Tuition and cost of attendance is public record and not subject to debate. Nor can Ms. Wang credibly contend that the Debtor paid this amount out of his own pocket as a student right out of high school.

Plaintiff has not pled that the student loan promissory note is material. "A fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" Conversely, "a false statement or omission that has no impact on a bankruptcy case is not material and does not provide grounds for denial of a discharge under § 727(a)(4)(A)." *In re Page*, 568 B.R. 687, 701 (Bankr. Alaska 2017). In denying the creditors objection to discharge, Judge Spraker held that "[i]n sum, the debtor made mistakes in his schedules. Many, if not most, debtors do. But mistakes alone do not warrant denial of discharge. These mistakes were innocently made, and *de minimis* in the context of this case."

This Court should soundly reject Plaintiff's allegation for the same reasons. Plaintiff continues to focus on the subject matter of the student loan without any focus on the impact of the student loan. Plaintiff has offered no evidence showing any impact on the estate, the case trustee, or creditors. Moreover, Plaintiff cannot provide any case authority that the characterization of a single scheduled debt, however important, is ever a sufficient basis standing alone to deny a discharge. This Court should decline to find that one disputed debt is material as a matter of law. This is especially true in light of the amount owed to Ms. Wang. Debtor's entire student loan debt is approximately one or two weeks of interest accruing on the judgment to Ms. Wang. It is not material when put in context.

Denial of a discharge is a severe sanction which should be reserved for the most egregious situations. The issues presented by Plaintiff do not include the quality or quantity of statements which must be required before depriving a debtor of the primary benefit of Chapter

7 proceedings. A denial of discharge is a "drastic" remedy reserved for only the truly "pernicious" debtor. *In re Bostrom*, 286 B.R. 352, 359 (Bankr. N.D. Ill. 2002). Mr. Sexton does not meet that criteria.

### 3. *Plaintiff's Section 727(a)(7) Claim Alleges Conduct More Than a Year Prior to Filing and Must be Dismissed*

"Section 727(a)(7) provides for a debtor's discharge to be denied if within one year prior to the commencement of a bankruptcy case, the debtor committed an act in a prior bankruptcy case which would have prevented a discharge from being entered in the prior case." *In re Smith*, 481 B.R. 633, 637 (Bankr. Nev. 2012). Plaintiff's 727(a)(7) claim asserts that Mr. Sexton's discharge should be denied due to a clerical error in the prior case from five years ago. This plainly fails to state a claim under Section 727(a)(7).

## III. CONCLUSION

For these reasons, Mr. Sexton respectfully requests the Court grant summary judgment in his favor on the causes of action pled in the First Amended Complaint and that he be granted a discharge for Ms. Wang's debt.

DATED this December 27, 2021.

**BARSKI LAW PLC**

By: /s/ Chris Barski
Chris D. Barski

ORIGINAL of the foregoing electronically
filed this 27th day of December, 2021, with:

Clerk of U.S. Bankruptcy Court, District of Arizona
https://ecf.azb.uscourts.gov

COPY of the foregoing e-mailed this same date, to:

Andrew A. Harnish, Esq.
May, Potenza, Baran & Gillespie P.C.
201 N. Central Ave., 22nd Floor
Phoenix, AZ 85004
aharnish@maypotenza.com
*Attorney for Plaintiff*

By: /s/ Danae Romero