Andrew A. Harnisch (024957)
**MAY, POTENZA, BARAN & GILLESPIE, P.C.**
1850 North Central Avenue, Suite 1600
Phoenix, AZ 85004-4633
Telephone: (602) 252-1900
Facsimile: (602) 252-1114
Email: aharnisch@maypotenza.com
*Counsel for Plaintiff Morgan Courtney Wang*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| NEIL N. SEXTON, | Case No. 2:21-bk-02123-EPB |
| Debtor. | **Adv. No. 2:21-ap-00174-EPB** |
| MORGAN COURTNEY WANG, | **TRIAL DECLARATION OF PLAINTIFF MORGAN COURTNEY WANG** |
| Plaintiff, | |
| v. | |
| NEIL N. SEXTON, | |
| Defendant. | |

I, MORGAN COURTNEY WANG, for my direct testimony at trial, hereby declare and state as follows:

1. As the Court is aware, I was catastrophically injured in a car crash in New York State that happened while Mr. Neil Sexton was driving.

2. That crash left me with permanent, life-changing injuries.

3. I was hospitalized after the crash for several weeks. For much of that time, I was completely bed-ridden.

4. I have read the trial declarations submitted by Fred Asgarian and Neil Sexton in this case.

5.  I disagree with Mr. Asgarian that Mr. Sexton displays a "deep sense of honesty, truthfulness, and integrity with his friend group."

6.  Prior to the crash, Mr. Sexton and I were in the same friend group. After the crash, he visited me frequently while I was hospitalized.

7.  Mr. Sexton's visits were marked by significant manipulation, deception and threats toward me.

8.  Mr. Sexton would bring me gifts in the hospital. These included a stuffed teddy bear which he asked to always keep in my bed and a necklace which he asked me to never take off so it would always remind me of our friendship.

9.  Mr. Sexton directly asked me not to file a lawsuit against him. He said that the family from the other vehicle had already sued him. This was false. He was never sued by the passengers of the other vehicle.

10. Mr. Sexton claimed that he too had serious, life-threatening medical issues, but never elaborated.

11. During one of his visits, I was concerned and told Mr. Sexton to take care of his medical issues. I also asked him why he had told my mother on the day of the crash that I was not injured and that everyone had walked away from the crash. He told me not to mention these topics again and that if I kept bringing them up, or if I did not get better, he intended to commit suicide by jumping off the hospital roof.

12. I was extremely upset by this conversation and worried about his suicide threat. He abruptly left the room, leaving me terrified that he would actually kill himself. I felt completely helpless because I was unable to follow him. I frantically called the nurse to search for him and prevent him from committing suicide.

13. In fact, after making the suicide threat he simply left the hospital and drove home.

14. Based on his manipulative behavior and certain admissions described later, I came to believe that his actions toward me while hospitalized were aimed at creating a bond that would convince me not to sue him.

15. I was upset and confused that the only members of my friend group who visited me regularly were Mr. Sexton and my future husband, David Carlson.

16. Mr. Sexton later admitted that he told our mutual friends a series of lies to keep them from visiting me. This admission happened in a phone call between David Carlson and Neil Sexton that I could hear because the call was on speaker.

17. Mr. Sexton admitted on the call that he told our mutual friends that I was exaggerating my injuries. On the same call he admitted that he had told our friends that I had accused him of raping someone.

18. I did not exaggerate my injuries, they were severe. I also never accused Mr. Sexton of being a rapist.

19. He stated on the same call that he was worried that if I sued him his insurance premiums would go up.

20. He stated on the call words to the effect of "I have to discredit her somehow. Her family is full of lawyers."

21. I believe that his false statements were the reason our other friends did not visit me in the hospital.

22. The foregoing facts were already testified to in the New York lawsuit as part of my claim for intentional infliction of emotional distress.

23. As the Court is likely aware from filings in this case, the jury in the New York lawsuit returned a verdict that Mr. Sexton committed outrageous conduct toward me.

24. I disagree with Mr. Sexton's testimony that he has made his "best efforts over the years to repay [his] debts." Mr. Sexton has never made a voluntary payment to me, either before or after entry of the judgment.

25. Mr. Sexton has never offered to help pay for my medical bills or other expenses incurred because of the crash.

26. Mr. Sexton's insurance company tendered the policy limit, which I recall being the minimum liability policy permitted by law.

27. Mr. Sexton's insurance company would not tender any funds unless I obtained a judgment against him.

28. Every other payment I have received was from wage garnishments.

29. During the approximately two years I received wage garnishments, I received about $748.16 per month. My understanding is that during that same time he voluntarily transferred $2,540 per month to his parents.

30. The amounts I received in garnishments are nowhere near enough to cover the medical costs I incurred since the crash.

31. Given the weeks of hospitalization, ongoing medications, ongoing surgeries, ongoing doctor visits, ongoing physical therapy, and other interventions that will continue into the future, my lifetime medical treatment costs from the crash will be in the millions of dollars, just as the New York jury found.

32. In my experience, which is detailed in this declaration, Neil Sexton is not honest in his dealings with others and has made false statements in his testimony in this matter.

I, Morgan Courtney Wang, declare under penalty of perjury that the foregoing is true and correct.

Executed and submitted this 9th day of November, 2023.

By: */s/ Morgan Courtney Wang*
Morgan Courtney Wang